UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SWEENEY,<br><br>　　　　　　Movant,<br><br>　　v.<br><br>INSPECTOR GENERAL OF THE UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>　　　　　　Respondent. | 14-mc-00054 LJO GSA<br><br>**ORDER DENYING MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO PRIVACY ACT OF 1978**<br><br>**(Doc. 2)** |

## **INTRODUCTION**

This is a miscellaneous action filed by Michael Sweeney ("Movant"), challenging the Office of the Inspector General of the United States Department of Agriculture's ("USDA," "OIG") attempt to obtain access to his financial records from the Bank of America ("BOA"). Pending before the Court is the Movant's Motion for an Order pursuant to the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 *et seq* ("RFPA"), OIG's Response, and the Movant's

Reply. (Docs. 2, 6, and 7). The Court has reviewed the pleadings and DENIES Movant's motion.

**RELEVANT BACKGROUND**

The Movant seeks an order quashing a subpoena duces tecum served by OIG which seeks to obtain all documents related to the Movant's financial account records from BOA beginning December 1, 2008 until January 31, 2010. (Doc. 3, pgs. 7-9). The Movant objects to the subpoena stating that the requested records are not relevant to any law enforcement inquiry because: (1) he has never mortgaged any collateral to the USDA; (2) he has never had any possession or control of any collateral that has been mortgaged to the USDA; and (3) the request is overbroad and based on vague allegations. He also contends that OIG has not complied with the RFPA because the subpoena does not set forth the specific nature of the law enforcement inquiry.

In its response, OIG argues that the subpoena is narrowly tailored and is necessary to conduct a law enforcement investigation into alleged unauthorized use of collateral mortgaged to USDA's Farm Service Agency ("FSA") by the Movant's son and daughter-in-law, Kevin and Misty Sweeney.[1] Declaration of Erika Marin, dated October 9, 2014 *("Marin Dec'l at ¶ 9)* (Doc. 6-2). More specifically, the government is investigating whether Kevin and Misty Sweeney misrepresented that they owned collateral for a loan issued by the FSA as required, and whether they failed to comply with the terms of loan service agreement.

To qualify for an operating loan with the FSA, the applicant must show sufficient repayment ability, pledge enough collateral to secure the loan fully, and demonstrate managerial ability to succeed in farming. *Marin Dec'l at ¶ 10*. The applicant must also have the legal

---

[1] FSA is an agency of USDA. FSA makes direct and guaranteed farm ownership and operating loans to farmers and ranchers who cannot obtain commercial credit from a bank or other lenders. Operating loans are available through FSA's Direct Loan Program.7 C.F.R. pt. 764. An operating loan can be used to purchase livestock, land, equipment, feed, seed, fuel, and farm chemicals; to pay other operating expenses; and to make minor improvements to buildings or make other farm improvements. *Marin Dec'l*. ¶ 10.

2

capacity to incur loan obligations, be unable to obtain credit elsewhere, and have an acceptable credit history. *Id*. Loan funds cannot be used to finance non-farm enterprises. *Id*.; 7 C.F.R. § 764.251 (appropriate uses of operating loan funds). Generally, proceeds from the sales of loan collateral should be used to pay off the loan. *Id*.; 7 C.F.R. §§ 765.301-765.305 (disposal of chattel security).

In March 2009, OIG obtained information that Kevin and Misty Sweeney signed a loan security agreement with FSA in order to obtain an FSA-funded loan in the amount of $218,000, for annual living and/or farm operating expenses. *Marin Decl.* at ¶ 12. The security agreement they signed stated that they were the absolute and exclusive owners of the collateral used for the loan (i.e., their 2009 crops and farm equipment), and that the collateral was free from all liens, encumbrances, security, and other interests. *Id*. However, although the security agreement states that the collateral they listed belonged to them, Kevin Sweeney subsequently admitted that some of the farm equipment belonged to his father, the Movant. *Id*.

Additionally, during the loan application process, FSA informed Kevin and Misty Sweeney that they had to obtain FSA's consent before selling or otherwise disposing of any loan collateral (e.g., their 2009 grape crop), and could only sell to certain buyers. *Id*. OIG's investigation discovered that Kevin Sweeney sold his grape crop to buyers other than those listed on the security agreement without consulting or obtaining clearance from FSA, and failed to remit all of the proceeds from their grapes as required by the loan agreement. *Id*. OIG is also investigating allegations that Kevin and Misty Sweeney used FSA loan funds for unauthorized purposes, including financing the farming activities of Movant. *Id*. at ¶ 9. In particular, despite statements by Kevin Sweeney that his father leased their joint farm operation to him in 2006, OIG received allegations that the Movant continued to farm on the land (either solely or with Kevin) and that the loan funds were used to fund the Movant's operations. *Id*. at ¶ 13.

OIG asserts that the supboened documents are required to determine: (1) whether the Movant made purchases or other financial transactions, or received income and other payments related to farming operations; and (2) whether any loan funds were transferred from Kevin and Misty Sweeney to Movant. *Id.* at ¶ 14. If Movant continued to farm (either on his own or jointly with Kevin Sweeney), and received funds from Kevin and Misty Sweeney at the time in question, it might indicate that Kevin and Misty Sweeney used loan funds for expenses other than what was authorized under the FSA loan agreement. *Id.* These activities could establish a criminal violation of 18 U.S.C. § 658 and 18 U.S.C. § 1014. *Id.* at ¶ 9.

## LEGAL STANDARD

As a general matter, the RFPA permits challenges by customers of financial institutions to government subpoenas. *See*, 12 U.S.C. § 3410(a). The RFPA was enacted by congress in response to the United States Supreme Court's ruling in *United States v. Miller*, 425 U.S. 435 (1976) wherein the Court held that bank customers had no Fourth Amendment right to privacy for financial information held by financial institutions. *Rosiere v. United States Securities and Exchange Commission*, 2010 WL 489526 (D. Nev. 2010). These challenge procedures constitute the sole judicial remedy available to customers who oppose the disclosure of their financial records pursuant to the RFPA. 12 U.S.C. § 3401 *et seq.*, 12 U.S.C. § 3410(e).

Pursuant to 12 U.S.C. § 3410(a), a customer of a financial institution "may file a motion to quash an administrative summons or judicial subp[o]ena, or an application to enjoin a [g]overnment authority from obtaining financial records pursuant to a formal written request" within "ten days of service or within fourteen days of mailing" of said summons or subpoena, with "copies served upon the Government authority."[2] The Supreme Court has held that "[a]

---

[2] Pursuant to 12 U.S.C. § 3401(5), " 'customer' means any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name[.]" 12 U.S.C. § 3401(5).

4

customer's ability to challenge a subpoena is cabined by strict procedural requirements." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984).

If the court finds that the customer has complied with section 3410(a), it shall order the government authority to file a sworn response, and the response may be filed in camera, provided the government furnishes the reasons which make such review appropriate. 12 U.S.C. § 3410(b); *See, Thomas v. U.S. Dept. of Homeland Sec.*, 876 F.Supp.2d 1, 5 - 6 (D.D.C., 2012). The court shall deny the motion or application if it "finds that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry[.]" 12 U.S.C. § 3410(c). There are only three grounds on which a district court may quash a subpoena: "(1) the agency's inquiry is not a legitimate law enforcement inquiry[;] (2) the records requested are not relevant to the agency's inquiry[;] or (3) the agency has not substantially complied with the RFPA." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir.1989); *See also, In re Bank United F.S.B. (10061) Coral Gables, Fla.*, 2012 WL 1225931, at *4 (N.D. Cal. April 11, 2011) (The movant bears the burden of proving that the subpoena is overbroad or otherwise not in accordance with the requirements of the RFPA.); *Nimmer v. Securities and Exchange Commission*, 2011 WL 3156791 at *1 (D. Neb. July 26, 2011) ("The customer must state either the reasons the financial records are not relevant to a legitimate law enforcement inquiry, or that the Government authority has not substantially complied with the RFPA.") (citing 12 U.S.C. § 3410); *See also,* 12 U.S.C. § 3405.

## **DISCUSSION**

Here, the Movant's argues that he has never had any involvement with collateralizing assets to secure a loan through the USDA and that his bank records would shed no light on the actual ownership of the collateralized assets. He also contends that the subpoena is defective because it is overbroad and fails to mention that OIG is investigating allegations that the Movant

5

received USDA loan funds.  Finally, he argues that the government's reliance on "allegations" of misconduct is insufficient because the government has not come forward with evidence in support of the request.  Therefore, OIG has not demonstrated that a legitimate law enforcement inquiry exists.

As previously noted, the Court must grant the instant motion to quash if:  (1) the agency's inquiry is not a legitimate law enforcement inquiry; (2) the records requested are not relevant to the agency's inquiry; or (3) the agency has not substantially complied with the RFPA. *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd*., 878 F.2d at 882.  With respect to the first prong of the analysis, there is a demonstrable reason to believe that the law enforcement inquiry is legitimate.  As set forth above, there is an ongoing investigation of the Movant's son's loan application with the FSA, and subsequent use of loan funds.  The government has established that the Movant's property may have been used as collateral for the FSA loan, and that loan funds may have been used to fund the Movant's farming operations.

With respect to the second prong of the analysis, the Movant bears the initial burden of showing that the documents sought are not relevant. See *Davidov v. Sec. & Exch. Comm'n,* 415 F.Supp. 2d 386, 391 (S.D.N.Y.2006).  If that burden is satisfied, OIG must only show that there is a reasonable belief that the records are relevant. *Id*. ("What need be shown is not probable cause, but good reason to investigate.)" (citation and internal quotation marks omitted)).  Here, the Movant contends that the requested records are not relevant because he has asserted in the sworn statement that he does not have, nor has he had possession of, or made any disposition of collateralized assets securing USDA loans.  He argues that the USDA has not established how his bank records would establish that the Movant's son used the Movant's property as collateral.  However, OIG has indicated that the Movant's son admitted that some of the farm equipment used as collateral belongs to his father.  Movant also argues that OIG has based part of the

justification of the investigation on the fact that it has received "allegations" that the Movant had not leased the farm to Kevin, and that the Movant may have received proceeds from the loan. He contends that the government's reliance on "allegations" has not established a valid reason to obtain the bank records.

These arguments are not persuasive. Under the RFPA, an agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." *In re Blunden*, 896 F. Supp. 996, 999 (C.D. Cal. 1995) (citations omitted). "What need be shown is not probable cause but a good reason to investigate." *Davidov v. Sec. & Exch. Comm'n*, 415 F. Supp. 2d at 391. The showing of relevance need not be substantial and any records that "touch on a matter under investigation" are considered relevant. *See Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d at 882. Given the facts, the government has established that the requested documents are relevant and necessary to conduct the investigation. Similarly, the Court is not persuaded by the Movant's argument that the request is overbroad. Despite the Movant's claims that OIG is seeking virtually all of his financial records from BOA, the government is only seeking financial records for a short time span beginning December 1, 2008 until January 31, 2010, and the subpoena request is limited to specific categories of documents. (Doc. 3, pg.8).

Finally, the Court is also not persuaded by the Movant's argument that OIG has not complied with the requirements of the RFPA because the notice of subpoena never identifies Michael Sweeney's alleged receipt of USDA loan funds; it only mentions an investigation into the unauthorized disposition of the actual assets pledged as collateral to secure the loan. It is well established that the government must provide a copy of the subpoena to the customer and provide the customer with reasonably specific notice of the nature of the law enforcement inquiry before obtaining records under the RFPA. 12 U.S.C.§ 3405(2). Here, the customer notice letter that

OIG served on the Movant informed him of the specific nature of the official OIG investigation, i.e, "Alleged Unauthorized Disposition of Collateral Mortgaged to the Farm Service Agency, U.S. Department of Agriculture." (Doc. 3, pg. 7). Although the Movant properly notes that the notice does not specifically reference that the investigation includes examining whether the Movant improperly received loan funds, the declaration supplied by Special Agent Erika Marin attests to these facts which is sufficient. *See*, *Rodriguez v. Federal Sav. & Loan Ins. Corp.*, 712 F. Supp. 159, 162 (N.D. Cal. 1989) (Even where the consumer notice is deficient, information in the government's response to a consumer challenge states the nature of inquiry with sufficient specificity). Therefore, the agency properly complied with the RFPA.

## **CONCLUSION**

Given the above, the Movant's Motion for an Order pursuant to the Right to Financial Privacy Act is DENIED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **October 20, 2014**              **/s/ Lawrence J. O'Neill**
                                                                    UNITED STATES DISTRICT JUDGE

8